IN RE INTEREST OF BOBBI JO MCMANAMAN, A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. BOBBI JO MCMANAMAN, APPELLANT.

383 N.W.2d 45

Filed March 14, 1986.   No. 85-521.

Robert Wm. Chapin, Jr., of Mowbray, Chapin & Walker, P.C., for appellant.

Michael G. Heavican, Lancaster County Attorney, and Leigh Ann R. DeVore, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

BOSLAUGH, J.

Bobbi Jo McManaman appeals from a determination by the separate juvenile court of Lancaster County, Nebraska, that she is a child under 18 years of age and a person as defined by Neb. Rev. Stat. § 43-247(1) (Cum. Supp. 1982). This determination was based upon a finding that the appellant provided false information to a police officer with intent to instigate an investigation of an alleged criminal matter, in violation of Neb. Rev. Stat. § 28-907(1)(a) (Cum. Supp. 1984).

On appeal the appellant claims that the separate juvenile court erred (1) in finding that the statements in question were made with criminal intent, (2) in finding that the appellant's comments were made for the purpose of instigating a criminal investigation, (3) in not granting appellant's motion to dismiss at the close of all the evidence, and (4) in improperly interpreting the legislative intent of § 28-907.

The first three assignments of error, in essence, constitute a challenge to the sufficiency of the evidence.

The facts giving rise to this case, as shown in the record, are that on March 25, 1985, in Lincoln, Nebraska, the appellant accepted a ride with four white males in a pickup truck. The four men and the appellant had all been at a party at the home of a mutual acquaintance. The appellant accepted the ride offered by one of the men, Michael Bell, thinking that she would be taken home. Her requests to be taken there were not heeded, and two of the men, Bell and Dennis Dyer, made sexual advances, which she rebuffed. Finally, after driving for some time and after repeated sexual advances by Bell and Dyer, the appellant was able to escape in the Wilderness Park area near Lincoln. She was able to flee when Bell and Dyer, who had her pinned to the ground in a hayfield and were threatening sexual assault, apparently were scared off by her loud screams.

The appellant then made her way to a farmhouse, where her mother was called. It was agreed that the appellant would be taken to the Lincoln Police Department. There, the appellant was questioned by Officer Geoffrey Marti. The appellant related a story which was generally accurate except for the statement that she had been forced into the truck against her will by two of the men. The appellant identified Michael Nickolite as one of these two men. She subsequently identified each of the four men from separate photographic arrays.

Two officers were involved in the followup investigation that night. Tracy Milbourn was arrested for kidnaping in the early morning hours following the incident. A broadcast was made for the other three men.

As a result of Milbourn's arrest, his pickup truck, the truck involved in the incident in question, was towed away that morning. Milbourn was subsequently charged with attempted

first degree sexual assault and kidnaping. A $50,000 bond was set for Milbourn's release, and his name was reported in local papers in connection with the incident. Because he was on parole, Milbourn was held for a period of time even after charges relating to the appellant's false allegations were dismissed.

On the day following the alleged kidnaping and attempted assaults, Det. Gregory Sorenson of the Lincoln Police Department interviewed Nickolite and Bell, who had both been arrested. After noting discrepancies between the appellant's and their stories, Detective Sorenson reinterviewed the appellant. At that time she admitted she had entered the truck voluntarily and that neither Nickolite nor Milbourn had done anything to her. The appellant said that she had made the statement about being abducted because she feared police inaction if she admitted she had entered the truck voluntarily and because she did not want to cause trouble for the acquaintance hosting the party which had involved alcohol and marijuana.

At trial it was stipulated that Michael Bell had pleaded guilty to a forgery charge as part of a plea bargain in which the charge of debauching a minor was dismissed. A charge of attempted debauching of a minor against Dennis Dyer was dismissed in exchange for his plea of guilty to disturbing the peace. At the end of all the evidence, the appellant renewed her motion to dismiss on the ground that the State had failed to establish a prima facie case under § 28-907(1)(a). The court found that, beyond a reasonable doubt, the appellant had violated the law as alleged in the petition.

Where the sufficiency of the evidence to sustain a conviction is challenged, "it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence." *State v. Fix*, 219 Neb. 674, 678, 365 N.W.2d 471, 474 (1985). Rather, in a case such as the present, we

"will not interfere with a verdict of guilty based on conflicting evidence unless, as a matter of law, the evidence is so lacking in probative force that it is insufficient to support the finding of guilt beyond a

reasonable doubt. * * * A guilty verdict of the fact finder in a criminal case must be sustained if there is substantial evidence, taking the view most favorable to the State, to support it."

*State v. Fallis,* 205 Neb. 465, 476, 288 N.W.2d 281, 287 (1980) (quoting *State v. Allen,* 198 Neb. 755, 255 N.W.2d 278 (1977), *overruled on other grounds, State v. Benson,* 199 Neb. 549, 260 N.W.2d 208 (1977)).

Section 28-907(1)(a) provides:

(1) A person commits the offense of false reporting if he or she: (a) Furnishes information he or she knows to be false to any peace officer or other official with the intent to instigate an investigation of an alleged criminal matter or to impede the investigation of an actual criminal matter.

In the present case there was evidence from which the separate juvenile court could find beyond a reasonable doubt that the appellant had made a statement she knew to be false to a peace officer. Officer Marti testified that when he interviewed the appellant on the night of the incident, she said that she had been forcibly abducted by two men, one of whom was Michael Nickolite. Detective Sorenson testified that after the appellant was confronted with the conflicting stories given by two of her alleged assailants, she admitted that she had not been abducted and that Tracy Milbourn and Michael Nickolite had committed no offenses against her. In fact, at trial the appellant admitted making the false statement to Officer Marti.

Further, there was evidence which, if believed, was sufficient to support the court's determination that the statement was made with the intent to instigate an investigation of an alleged criminal matter. The appellant claims that, because she "embellished" her story merely to ensure that the police would take action in regard to the sexual molestations, she did not act with the requisite criminal intent. At trial the appellant explained that she had given the abduction statement in order to protect a friend who was hosting a party where marijuana, drug paraphernalia, and alcohol were available. This evidence suggests that the appellant fully intended to shift attention away from the party to the alleged kidnaping. The court committed no error in finding beyond a reasonable doubt that the

appellant had violated the provisions of § 28-907(1)(a).

The appellant's final assignment of error alleges that the separate juvenile court misinterpreted and misapplied § 28-907(1)(a), in that the purpose of the statute is to punish persons who, for personal or malicious gain, file reports with the police which have no basis in fact, have no substance, and are totally void of any truth. The appellant asserts that § 28-907(1)(a) should not be used to punish the giving of false information where any part of the report has led to the conviction of a third party.

In *NC+ Hybrids v. Growers Seed Assn.*, 219 Neb. 296, 299, 363 N.W.2d 362, 365 (1985), we stated that, in interpreting a statute,

> the Supreme Court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. It is our duty to discover, if possible, legislative intent from the statute itself. *Adkisson v. City of Columbus*, 214 Neb. 129, 333 N.W.2d 661 (1983). The Supreme Court, in construing a statute, looks to the objects to be accomplished, the evils and mischief sought to be remedied, or the purposes to be served, and places upon the statute a reasonable or liberal construction which will best effect its purpose rather than one which will defeat it. *Mitchell v. Douglas County*, 213 Neb. 355, 329 N.W.2d 112 (1983).

Previously, in *State v. Fix*, 219 Neb. 674, 365 N.W.2d 471 (1985), we determined that the evil intended to be prevented by § 28-907(1)(a) had occurred where a false statement made by the defendant resulted in the waste of time and effort on the part of law enforcement personnel. In *State v. Ewing*, 221 Neb. 462, 378 N.W.2d 158 (1985), we held that the underlying purpose of § 28-907(1)(a) is to prevent the public from willfully furnishing erroneous information to law enforcement officers and thus interfering with the performance of their duties.

Construing a similar statute, the court in *State v. Daniels*, 165 N.J. Super. 47, 50, 397 A.2d 700, 701 (1979), concluded:

> While the underlying purpose of the statute is concededly to prevent "waste of investigative resources" and to

prevent distraction and misleading of the police from their activity in detection and investigation of crime [citation omitted], we believe the full scope of the legislative contemplation as to the prohibited conduct extends to the prophylactic purpose of the statute in preventing conduct which *could* mislead, deter and distract the police . . . .

In *Daniels* the court found the defendant in violation of the statute despite the fact that his false information had no adverse impact upon the police investigation. The court stated: "All that is essential is that the information given must have been false and that it might have had a relationship to the crime and to normal police activity directed toward the detection of any offenders implicated and any investigation related thereto." *Id.*

In the present case the appellant's false information obviously effected the criminal investigation in question. Although two convictions were obtained from the truthful information relayed by the appellant, her false information led to the expending of law enforcement resources to investigate a crime which never occurred. We conclude that the separate juvenile court properly interpreted and applied § 28-907(1)(a) in this case.

The judgment is affirmed.

AFFIRMED.