IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


MIAO V. HOLCOMB


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


JINGYI MIAO, APPELLANT,

V.

DAVID C. HOLCOMB, APPELLEE.


Filed May 26, 2026.    No. A-25-659.


Appeal from the District Court for Douglas County: THOMAS K. HARMON, Judge. Affirmed.

Jingyi Miao, pro se.

Maria A. Vera, of Vera Law Firm, for appellee.


RIEDMANN, Chief Judge, and BISHOP and FREEMAN, Judges.

FREEMAN, Judge.

## INTRODUCTION

Jingyi Miao appeals from the order entered by the district court for Douglas County that dismissed her harassment protection order. She also argues that the trial court judge erred by failing to recuse himself from the case. For the reasons explained below, we affirm.

## BACKGROUND

On July 31, 2025, Miao petitioned the district court to obtain a harassment protection order against David C. Holcomb. In support of her petition, Miao listed three different instances involving Holcomb.

First, in either 2018 or 2019, Holcomb approached her in an "overly familiar way." He gave her his business card and told her that he was an attorney.

- 1 -

On July 27, 2025, Holcomb came "in close proximity to" her at church and said, "[H]ello." Though she tried to avoid him, she felt that he was following her and made her feel unsafe. She stated to Holcomb, "I don't know you, leave me alone." She believed that he was threatening her, and she was terrified because of his "creepy smile."

On July 30, 2025, Miao saw Holcomb at another church service. She stated, "[H]e seems to be lurking, stalking, and shows up unwanted," and that he has a "disturbing presence." "He seems to be monitoring my movements . . . crossing personal boundaries [without] consent."

An ex parte harassment protection order was entered on July 31, 2025. On August 21, a hearing was held on whether to maintain the harassment protection order.

Before the hearing began, the trial court judge informed both parties that he attended the church where one of the incidents occurred. He also had general knowledge of both parties. However, the judge was only aware of the situation between the parties based on the testimony and evidence he received in the case. During the hearing, he gave both parties the opportunity to either waive the disqualification or ask for a recusal. Both parties waived the disqualification.

At the hearing, Miao testified that Holcomb was creepy and kept following her despite her warnings to him. He would stare at her in a "harassing way." She also stated that he was banned from the church where he had approached her.

Holcomb also presented evidence and testimony in support of a petition he had filed to obtain a harassment protection order against Miao. This protection order is not at issue in this appeal and will not be discussed further.

At the hearing, Miao interrupted Holcomb while he was testifying and accused him of lying. The district court warned her of a contempt citation and instructed her not to raise her voice.

On August 26, 2025, the district court issued an order not affirming the protection order and dismissed the case with prejudice. The district court determined that:

> 14. [Miao] did not have direct eye contact with the Court and appeared emotional, inconsistent and untruthful in her testimony.
>
> 15. [Miao's] credibility was impeached and her version impaired or rendered suspect by her antics in the courtroom.
>
> 16. The Court finds that she embellished and exaggerated her testimony and her testimony was not persuasive nor credible.
>
> 17. [Miao's] version of the events did not "ring true" and it is more likely than not that her version of events is not what actually occurred between the parties.

The order also stated that the judge did not believe his prior knowledge of the parties provided a basis for recusal.

Miao appeals.

## ASSIGNMENTS OF ERROR

Miao assigns, restated and reordered, that the trial court judge erred by (1) failing to recuse himself and (2) dismissing her harassment protection order.

## STANDARD OF REVIEW

A motion requesting a judge to recuse himself or herself on the ground of bias or prejudice is addressed to the discretion of the judge, and an order overruling such a motion will be affirmed on appeal unless the record establishes bias or prejudice as a matter of law. *State v. Ezell*, 314 Neb. 825, 993 N.W.2d 449 (2023). An appellate court reviews matters of law de novo, independently of the lower court's determination. *Gonzales v. Nebraska Pediatric Practice*, 308 Neb. 571, 955 N.W.2d 696 (2021).

The grant or denial of a protection order is reviewed de novo on the record. *Dugan v. Sorensen*, 319 Neb. 326, 22 N.W.3d 623 (2025). In such de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court. *Id.* However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

## ANALYSIS

*Trial Court Judge's Recusal.*

Miao argues that the trial court judge erred when he failed to recuse himself.

A defendant seeking to disqualify a judge on the basis of bias or prejudice bears the heavy burden of overcoming the presumption of judicial impartiality. *State v. Ezell, supra.*

It is presumed that all judges in this state carry out all of their duties competently and diligently. *Id.* One such duty is that "[a] judge shall uphold and apply the law, and shall perform all duties of judicial office fairly and impartially." Neb. Rev. Code of Judicial Conduct § 5-302.2. In addition:

> (A) A judge shall not be swayed by public clamor or fear of criticism.
>
> (B) A judge shall not permit family, social, political, financial, or other interests or relationships to influence the judge's judicial conduct or judgment.
>
> (c) A judge shall not convey or permit others to convey the impression that any person or organization is in a position to influence the judge.

Neb. Rev. Code of Judicial Conduct § 5-302.4.

Neb. Rev. Code of Judicial Conduct § 5-302.11 controls when a judge is disqualified from a proceeding. § 5-302.11 states:

> (A) A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:
>
> (1) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding.
>
> (2) The judge knows that the judge, the judge's spouse or domestic partner, or a person within the fourth degree of relationship to either of them, or the spouse or domestic partner of such a person is:
>
> (a) a party to the proceeding, or an officer, director, general partner, managing member, or trustee of a party;

(b) acting as a lawyer in the proceeding;

(c) a person who has more than a de minimis interest that could be substantially affected by the proceeding; or

(d) likely to be a material witness in the proceeding.

. . .

(C) A judge subject to disqualification under this Rule, other than for bias or prejudice under paragraph (A)(1), may disclose on the record the basis of the judge's disqualification and may ask the parties and their lawyers to consider, outside the presence of the judge and court personnel, whether to waive disqualification. If, following the disclosure, the parties and lawyers agree, without participation by the judge or court personnel, that the judge should not be disqualified, the judge may participate in the proceeding. The agreement shall be incorporated into a permanent record of the proceeding.

This duty exists even in the absence of a motion by a party and continues throughout the proceedings. *State v. Ezell, supra.* Judges are under a continuing obligation to disqualify themselves whenever their impartiality may reasonably be questioned, and although a judge may initially be free from bias and prejudice, disqualification may well become necessary over the course of a proceeding. *Id.*

According to comment 5 of § 5-302.11, "[a] judge should disclose on the record information that the judge believes the parties or their lawyers might reasonably consider relevant to a possible motion for disqualification, even if the judge believes there is no basis for disqualification." Upon such disclosure, particular enumerated grounds for disqualification can be waived by the parties after consideration "outside the presence of the judge and court personnel." *State v. Ezell*, 314 Neb. 825, 836, 993 N.W.2d 449, 458-59 (2023) (quoting § 5-302.11(C)). However, a party cannot waive the disqualification of a judge due to the judge's personal bias or prejudice toward the party or the party's lawyer. *State v. Ezell, supra.* Absent any direct personal connection to the proceeding, a judge's disqualification is not required as a matter of law. *Id.*

When evaluating a trial judge's alleged bias, the question is whether a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice was shown. *Id.*

Here, the trial court judge informed both parties on the record of his connection to the case. The judge stated that he attended the same church where one of the incidents occurred and was generally familiar with both parties. However, he was unaware of any incidents occurring between the parties.

This passing knowledge of the parties' existence is not a direct personal connection to the proceedings where the judge's impartiality might reasonably be questioned. See also *State v. Fuentes*, 302 Neb. 919, 926 N.W.2d 63 (2019) (observing the fact that judge knows someone through prior contact does not, by itself, create appearance of impropriety). Therefore, this is not an instance where recusal is required, even if waived.

Miao did not request a recusal but, instead, waived the disqualification noted by the judge. A party is said to have waived his or her right to obtain a judge's disqualification when the alleged basis for the disqualification has been known to the party for some time, but the objection is raised

- 4 -

well after the judge has participated in the proceedings. *State v. Buttercase*, 296 Neb. 304, 893 N.W.2d 430 (2017), *abrogated on other grounds, State v. Ezell, supra.* And while the parties' consultation regarding waiver did not occur "outside the presence of the judge and court personnel" as set forth in § 5-302.11(C), the trial court judge's connection to the case is not subject to disqualification under § 5-302.11, as discussed. However, we note that it may be best practice to provide the parties an opportunity to consult outside the presence of the court and court personnel as set forth in § 5-302.11(C) before the waiver is put on the permanent record of the court, even if the judge believes there is no basis for disqualification. See *State v. Ezell, supra.*

Therefore, based on our de novo review, the trial court judge did not err, and Miao waived any objection she had to the judge presiding over her case.

*Harassment Protection Order.*

Miao argues that the district court erred by dismissing her harassment protection order. She argues that the district court erred by crediting Holcomb's testimony, discrediting her testimony, and finding insufficient evidence to affirm the protection order. Before addressing this argument, we set out the legal framework for evaluating show cause hearings in protection order cases followed by the factors that must be established to affirm a harassment protection order.

A show cause hearing in protection order proceedings is a contested factual hearing, in which the issues before the court are whether the facts stated in the sworn application are true. *Dugan v. Sorensen*, 319 Neb. 326, 22 N.W.3d 623 (2025). A protection order is analogous to an injunction, and a party seeking an injunction must establish by a preponderance of the evidence every controverted fact necessary to entitle that party to relief. *Id.* As such, the petitioner at a show cause hearing following an ex parte order has the burden to prove by a preponderance of the evidence the truth of the facts supporting a protection order. *Id.* Once that burden is met, the burden shifts to the respondent to show cause as to why the protection order should not remain in effect. *Id.*

The petitioner at a show cause hearing to affirm a harassment protection order must prove the following material elements by a preponderance of the evidence: (1) the respondent knowingly and willfully engaged in a course of conduct directed at the petitioner that seriously terrified, threatened, or intimidated the petitioner; (2) a reasonable person under the circumstances would have been seriously terrified, threatened, or intimidated by the respondent's conduct; and (3) the respondent's conduct served no legitimate purpose. See *id.*

Here, Miao had the burden to prove by a preponderance of the evidence the truth of her statements. Miao offered evidence at the hearing consisting of her statements in her petition and her testimony. The district court expressly found her statements were not credible due to "her antics in the courtroom," which is supported by the record where she interrupted testimony and was reprimanded by the district court. In its written order, the district court further recognized that Miao "did not have direct eye contact" and "appeared emotional, inconsistent, and untruthful." The district court also found that she "embellished and exaggerated her testimony and her testimony was not persuasive." We give weight to the district court's observations of Miao and its determination of credibility which is supported by the record. See *Dugan v. Sorensen, supra.* And even though Miao argues that the district court credited Holcomb's testimony, we note that the district court did not make an explicit finding on the credibility of Holcomb's testimony, nor was

it needed, as Miao had the burden of proof. Because the district court did not find Miao's statements to be credible, there was insufficient evidence of the material elements to affirm the protection order.

Therefore, the district court did not err in its ruling.

CONCLUSION

We conclude that the trial court judge did not err by failing to recuse himself. Additionally, there was insufficient evidence to affirm the harassment protection order.

AFFIRMED.